UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH HOWELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION<br><br>Defendant. | Civil Action No. 26-cv-7168<br><br>**CLASS ACTION COMPLAINT**<br><br>**AND JURY DEMAND** |

Plaintiff Elizabeth Howell ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel of record, brings this action against Defendant Costco Wholesale Corporation ("Costco," "Defendant," or the "Company"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to herself and her own actions and counsel's investigations, and upon information and belief as to all the other matters, are as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and all consumers who purchased goods sold and shipped by Costco throughout the United States and who bore the economic burden of the tariffs that President Donald Trump's ("Trump") Administration's imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §1701, *et seq.*

2. Costco, as the importer of record ("IOR"), shifted the economic burden of the IEEPA tariffs to consumers, including Plaintiff, throughout the United States by means of price increases on imported goods as well as U.S.-sourced goods not subject to the tariffs.

3. As a result, Costco now receives—or has the unilateral right to receive—an inequitable windfall: refunds from the federal government for tariff costs that Costco shifted to Plaintiff and other consumers, who purchased goods from Costco. Because Plaintiff and other Costco customers paid those tariff costs, they are the real parties in interest entitled to receive the IEEPA tariff refunds.

4. Costco collected hundreds of millions of dollars in unlawful tariffs from consumers by raising prices on imported goods and U.S.-sourced goods while the tariffs imposed by the Trump Administration under IEEPA were in effect.

5. Under the refund process that followed the United States Supreme Court's invalidation of the IEEPA tariffs, ***only*** the IOR may apply for and receive a refund of any money paid on imported goods. Costco, however, shifted the cost of these tariffs to its customers by raising prices on both tariffed and non-tariffed products, meaning Plaintiff and similarly situated consumers truly bore the tariff costs.

6. Costco has not returned ***any*** portion of those costs it passed on to consumers, and it has no intention of doing so. It has, in short, generated and retained a windfall from unlawful government action, and consumers—not Costco—are the ones left paying for it.

7. This dispute arises from a fundamental inequity in the tariff refund process. Only the IOR may seek a refund for an unlawfully assessed tariff—but IORs merely advance the tariff cost at the border and recoup all or a substantial part of it through higher consumer prices. In economic reality, the end-consumer paid the illegal tariff.

8. This inequity is compounded when, as here, the courts struck down a tariff as void *ab initio*. Consumers who bore the true economic burden have no direct avenue for redress—they both lack a statutory cause of action in the United States Court of International Trade ("CIT") and

standing to seek a refund. That right belongs exclusively to the IOR—here Costco or its agents—regardless of who actually paid. The refund process, as designed, leaves large corporations that passed the entire tariff cost to their customers exclusively entitled to a full refund of tariffs the Supreme Court has since declared unlawful.

9. This lawsuit seeks to compel Costco to return funds collected from millions of consumers to cover IEEPA tariffs between February 4, 2025, and February 20, 2026 ("Class Period"). Costco has made no commitment to compensate consumers for those payments. Costco's position not only fails to reimburse consumers for the portion of the unlawful tariffs that Costco forced upon them by means of across-the-board price increases, but it also unjustly enriches Costco at the consumers' expense.

10. Plaintiff seeks a judgment that requires Costco to return to Plaintiff all IEEPA duties passed on to customers in the form of higher prices on products for which Costco was the seller or shipper, with interest.

11. Plaintiff also seeks, on behalf of herself and the Class, restitution of the tariff and tariff-related fee overcharges they paid, or a proportionate share of any tariff refunds Costco recovers, together with interest, reasonable attorneys' fees, and costs.

**JURISDICTION**

12. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

13. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events, omissions, and misrepresentations giving rise to Plaintiff's claims occurred in this District. Plaintiff's purchase(s) from Costco, at issue in this case, were made in this District. Costco

also marketed, advertised, made available for sale, and shipped products subject to IEEPA tariffs within this District.

## PARTIES

### A. Plaintiff

14. Plaintiff Elizabeth Howell is a citizen and resident of New York domiciled in Richmond Hill, NY. During the Class Period, Plaintiff purchased groceries, household goods, apparel, and other merchandise directly from Defendant. Some or all of these products were imported from countries subject to IEEPA tariffs and sold at prices inflated by Defendant's pass-through of IEEPA tariff costs. Plaintiff also purchased other products that were sourced from within the United States and, while not subject to tariffs, were sold at inflated prices, due to Defendant spreading the IEEPA tariff costs across its product line, so that purchasers of non-tariffed domestic goods also bore the tariff burden.

### B. Defendant

15. Defendant Costco is a Washington corporation with its headquarters and principal place of business located at 999 Lake Drive, Issaquah, Washington, 98027. Costco is an American multinational retail company that conducts business throughout the United States and its territories. Costco is one of the world's largest retail companies. At all relevant times, Costco operated a brick and mortar and online store through which it sold imported products and U.S.-sourced products directly to consumers. Between February 4, 2025, and February 20, 2026, Costco collected tariff costs from those consumers on goods subject to tariffs imposed under the IEEPA, as well as goods not subject to tariffs imposed under IEEPA. On information and belief, the misconduct alleged herein originated from and was directed out of Defendant's headquarters and principal place of business in Issaquah, Washington.

## FACTUAL ALLEGATIONS

**A. Costco Wholesale Corporation is an Enormous Retailer of Imported Goods and U.S.-Sourced Goods**

16. Costco is a major retailer that imports a substantial volume of consumer goods into the United States and sells them to consumers throughout the country through both its physical locations and its online store.

17. Costco purchases the goods it sells wholesale from vendors, suppliers, and manufacturers, including, but not limited to, a substantial volume of goods imported from outside the United States, and resells them to consumers in its brick and mortar and online store. Costco owns much of the inventory it offers for sale and sets the retail prices its customers pay for such products.

18. For the imported goods it sells, Costco's involvement begins before the goods enter the United States. As the IOR, Costco signs the customs declaration, takes legal responsibility for compliance, and pays the tariff to U.S. Customs and Border Protection ("CBP"). On information and belief, Costco serves as the IOR for a substantial portion of the imported goods it sells.

19. Costco's products are not limited to imported goods. Costco also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs. Costco offers these U.S.-sourced goods to consumers in its brick and mortar and online store, alongside its imported goods. As with its imported goods, Costco owns this inventory and sets the retail prices its customers pay.

20. The IEEPA tariffs increased the costs Costco incurred on the imported goods for which it was the IOR. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Costco recovered the tariff costs by

raising prices across its products, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

21. As a result, Costco sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs ***and*** sold its U.S.-sourced goods at prices likewise inflated by Costco's decision to spread those same tariff costs across its sold products.

22. Consumers who purchased U.S.-sourced goods from Costco therefore bore a portion of the IEEPA tariffs that Costco incurred on imported goods those consumers never purchased.

### A. The Trump Administration Invokes the IEEPA to Implement Tariffs

23. On February 4, 2025, Trump issued an executive order imposing a 10% tariff on Chinese imports.[1] In March 2025, Trump issued two more executive orders imposing a 25% tariff on goods imported from Canada and Mexico, respectively.[2] By April 2025, the Trump Administration had imposed tariffs on imports from most other U.S. trading partners.

24. The Trump Administration invoked the IEEPA as the legal basis for these tariffs. Congress designed the IEEPA to allow the President to regulate international commerce during declared national emergencies.[3] The Trump Administration pointed to drug trafficking across U.S.

---

[1] Andrea Shalal et al., *Trump launches trade war with tariffs on Mexico, Canada and China*, Reuters (Feb. 1, 2025), https://www.reuters.com/business/trump-readies-order-steep-tariffs-goods-mexico-canada-china-2025-02-01/.

[2] *Id.*

[3] Christopher A. Casey et al., *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, Cong. Rsch. Serv. R45618 (Sep. 1, 2025) https://www.congress.gov/crs-product/R45618.

borders and the persistent American trade deficit as the legal emergencies justifying the IEEPA tariffs.[4]

25. The IEEPA tariffs did not operate in isolation. For example, for much of 2025, the effective rate on most Chinese electronics was approximately 45%: a 20% IEEPA layer on top of an existing 25% Section 301 tariff.[5] At the peak of the escalation in early May 2025, average U.S. tariffs on Chinese imports reached 127.2%.[6]

26. On April 3, 2025, within days of the IEEPA tariffs taking effect, the first lawsuit challenging their legality was filed.[7] Despite business groups' palpable fears of provoking the Trump Administration,[8] other lawsuits eventually followed.[9] These filings were widely reported and as a major retailer, Costco certainly tracked their progress.[10]

---

[4] Shalal, *supra* note 1.

[5] Section 301 of the US Trade Act of 1974 authorizes the President to take all appropriate action, including tariffs, to remove a foreign government's practice that violates an international trade agreement and that restricts US commerce. 19 U.S.C. §2411. Trump implemented Section 301 tariffs in 2018.

[6] Chad P. Bown, *US-China Trade War Tariffs: An Up-to-Date Chart*, Peterson Inst. for Int'l Econ. (Nov. 14, 2025), https://www.piie.com/research/piie-charts/2019/us-china-trade-war-tariffs-date-chart.

[7] *Emily Ley, Paper, Inc., d/b/a Simplified v. Trump*, No. 3:25-cv-464-TKW-ZCB (N.D. Fla. Apr. 3, 2025).

[8] Caitlin Oprysko¸ *'Everyone is terrified': Business and government officials are afraid to cross Trump on tariffs*, Politico (Apr. 4, 2025), https://www.politico.com/news/2025/04/04/trump-tariffs-fear-lobby-business-congress-00006608.

[9] *See, e.g.*, Doug Palmer¸ *Trump's tariffs could face more than one legal challenge*, Politico (Apr. 4, 2025), https://www.politico.com/news/2025/04/04/first-lawsuit-filed-against-trumps-tariffs-00273646; Larry Neumeister, *A dozen states sue the Trump administration to stop tariff policy*, Associated Press (Apr. 23, 2025), https://apnews.com/article/tariffs-lawsuit-what-states-sue-0d6531b7f60aaa2f7c6c35e0a944d4a9.

[10] *Id.*

27. On February 20, 2026, the U.S. Supreme Court issued its opinion in *Learning Resources, Inc. v. Trump*, holding that the IEEPA did not authorize the President to impose the IEEPA tariffs and that they were invalid *ab initio*.[11]

28. The Supreme Court's decision in *Learning Resources* eliminated the legal basis for the IEEPA tariffs and created a pathway for IORs like Costco to seek refunds of the tariffs previously collected by the federal government.

**A. Consumers Incurred Price Increases on Defendant's Products While the IEEPA Tariffs Were in Effect**

29. The IEEPA tariffs increased the costs that retailers, including Costco, incurred on imported goods. Across the retail industry, companies responded by passing those increased costs on to consumers through higher prices. A survey of American chief executive officers ("CEOs") found that a majority had already raised prices or were considering doing so in response to the tariffs,[12] and major retailers publicly announced tariff-driven price increases throughout 2025 and into 2026.[13]

30. Independent economic analysis confirms that businesses passed a substantial portion of the tariff costs through to U.S. consumers during the relevant period. The Federal Reserve found that pass-through to consumers for goods imported from China was at least 30%

[11] *Learning Res., Inc. v. Trump*, 607 U.S. __, 146 S. Ct. 628, 646 (2026).

[12] Ali McCadden, *Here are the retailers raising prices as Trump tariffs take hold*, CNBC (May 31, 2025), https://www.cnbc.com/2025/05/31/trump-tariffs-here-are-the-retailers-raising-prices.html (reporting the CEO/AlixPartners survey of U.S. CEOs and individual retailer price-increase announcements).

[13] Megan Cerullo, *Walmart and other big companies say tariffs are forcing them to hike prices*, CBS News (Feb. 20, 2026), https://www.cbsnews.com/news/walmart-trump-tariffs-general-merchandise-inflation/.

between April and December 2025.[14] Federal Reserve Bank of New York research found that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs.[15]

31. These price increases were not confined to imported goods. Analyses of retail pricing found that prices rose on both imported and domestically produced goods as retailers spread tariff-related costs across their product lines.[16] Researchers estimated that tariff pass-through added roughly 0.7 percentage points to the Consumer Price Index by September 2025, and that the lowest-priced product varieties saw the steepest increases (around 5%) because retailers had the least room to absorb the cost in their margins.[17]

32. The cumulative burden on consumers was enormous. After years of moderating prices, consumer goods prices rose throughout 2025 and into 2026.[18] According to the Budget Lab at Yale University, tariffs accounted for an estimated 86% of the rise in prices for imported household goods, with the effect most pronounced for long-lasting durable goods such as cars,

---

[14] Sinem Hacıoğlu-Hoke et al., *The Slow Climb: How Tariffs Gradually Raised Retail Prices in 2025*, Bd. of Governors of the Fed. Rsrv. Sys., FEDS Notes (Mar. 5, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/the-slow-climb-how-tariffs-gradually-raised-retail-prices-in-2025-20260305.html.

[15] Cerullo, *supra* note 13 (reporting Federal Reserve Bank of New York research that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs).

[16] Alberto Cavallo et al., *Are Tariffs Raising U.S. Retail Prices?* (UPDATED), Econofact (Dec. 4, 2025), https://econofact.org/are-tariffs-raising-u-s-retail-prices (summarizing the Cavallo/Harvard Business School Pricing Lab analysis of online pricing at five major U.S. retailers, including price increases on domestically produced goods).

[17] *Id.*

[18] *Tracking the Economic Effects of Tariffs*, Yale Budget Lab (Apr. 1, 2026), https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs.

appliances, and furniture.[19] American consumers paid more than $231 billion in tariff costs between February 2025 and January 2026, an average of roughly $1,745 per family.[20]

33. Costco's products are not limited to imported goods. Costco also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs, which it offers to consumers alongside its imported goods. As with its imported goods, Costco owns this inventory and sets the retail prices its customers pay.

34. The IEEPA tariffs increased the costs Costco incurred on the imported goods for which it served as an IOR. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Costco (like other major retailers) made a business decision to recover the tariff costs by raising prices across its products, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

35. As a result, Costco sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by its decision to spread those same tariff costs across its product line. Consumers who purchased U.S.-sourced goods from Costco therefore bore a portion of the IEEPA tariffs that Costco incurred on imported goods those consumers never purchased.

36. Costco maintains detailed transaction, pricing, and customer records, including point-of-sale data, online order histories, and payment and loyalty-program records, through which

---

19 *Id.*

20 *American Families Have Paid More Than $1,700 Each in Tariff Costs Since Trump Entered Office*, Joint Econ. Comm. Minority (Feb. 2026), https://www.jec.senate.gov/public/_cache/files/7cc03e65-d40a-465f-9e88-09dd53d3502f/jec-fact-sheet-on-cost-of-tariffs-for-families-update.pdf.

Costco is able to identify the consumers during the Class Period who paid tariff-inflated prices attributable to the IEEPA tariffs.

37. Costco has acknowledged that tariffs would increase its costs and affect consumer pricing. During Costco's March 6, 2025 earnings call, Chief Executive Officer Ron Vachris explained that it was "difficult to predict the impact of tariffs" but that Costco intended to manage those cost increases in a manner that would lessen their effect on members.[21] Vachris further disclosed that roughly one-third of Costco's domestic sales were derived from imported goods, including imports from China, Canada, and Mexico.[22]

38. Although Costco publicly emphasized its commitment to low prices, Costco simultaneously acknowledged that tariff-related inflation was already affecting the prices consumers paid. During Costco's May 29, 2025 earnings call, Chief Financial Officer Gary Millerchip stated that "raising prices is always seen as a last resort."[23] Later in the same call, however, Millerchip admitted that Costco had increased prices on certain products because "we saw inflation as a result of tariffs," and that Costco "did increase some price there because we felt that that was something that the member would be able to absorb and it was more of a discretionary item there."[24]

39. Costco's financial results during the tariff period are consistent with the conclusion that Costco passed tariff costs through to consumers. In the quarterly period ending on November

---

[21] *Costco Wholesale Corporation (COST) Q2 FY2025 Earnings Call Transcript,* Roic AI, (March 6, 2025) https://www.roic.ai/quote/COST/transcripts/2025-year/2-quarter.

[22] *Id.*

[23] *Costco Wholesale Q3 2025 Earnings Call Transcript*. Fortune. https://fortune.com/company/costco/earnings/q3-2025/

[24] *Id.*

23, 2025, Costco reported increased gross margins despite substantial tariff costs.[25] During the quarterly period ending on February 15, 2026, Costco again reported increased gross margins and improved core merchandising margins.[26] These results reflected Costco's ability to maintain or expand profitability while the federal government imposed unlawful tariffs on imported merchandise.

40. While collecting these tariff costs from consumers through higher prices, Costco is simultaneously entitled to pursue a refund of the same IEEPA tariffs from the federal government following the Supreme Court's invalidation of those tariffs. On information and belief, Costco will recover those tariffs in full. If Costco retains that refund without compensating the consumers who already bore the tariffs' cost, Costco will have recovered the same tariff ***twice***—once from its customers and once from the government—and will be made whole twice over at the Class's expense.

41. Plaintiff and Class members paid tariff-inflated prices to Costco during the Class Period. Costco now seeks to retain the benefit of those consumer payments while also recovering, and keeping for itself, the refund of the same tariffs.

**A. Defendant Will Receive an Unjust Windfall from IEEPA Tariff Refunds**

42. Following the Supreme Court's decision in *Learning Resources*, nearly 2,000 importers began attempting to recover tariff refunds from the federal government. On March 5,

[25] Costco Wholesale Corporation, Q1 - FY'26 Earnings Supplement Presentation

https://s201.q4cdn.com/287523651/files/doc_presentations/2025/Dec/11/Q1-FY-26-Earnings-Supplement.pdf

[26] Costco Wholesale Corporation, Q2 - FY'26 Earnings Supplement Presentation, https://s201.q4cdn.com/287523651/files/doc_presentations/2026/Mar/05/Q2-FY-26-Earnings-Supplement.pdf.

2026, the CIT ordered refunds of IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs.[27] The CIT ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to the IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."[28]

43. The Executive Director of CBP's Trade Programs Directorate estimated that as of March 4, 2026, CBP had collected approximately $166 billion in IEEPA duties and estimated duty deposits.[29] Given Costco's size, it is entitled to seek and collect hundreds of millions of dollars in refunds of tariff costs on products it sold—costs that consumers ultimately paid.

44. Despite knowing of the numerous challenges to the legality of the IEEPA tariffs, Costco deceived consumers by failing to disclose that it would not refund duties paid by consumers to cover IEEPA tariffs even if they were later invalidated.

45. Costco wrongfully took these funds from consumers to cover IEEPA tariffs that have since been invalidated.

## CLASS ALLEGATIONS

46. Plaintiff brings this action individually and as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), seeking damages and injunctive relief pursuant to federal and state law on behalf of the members of the following Class:

a. **Imported Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, inclusive, purchased from Costco a good

---

[27] *Atmus Filtration, Inc. v. United States*, No. 1:26-01259 (U.S. Ct. Int'l Trade Mar. 5, 2026), ECF 29.

[28] *Id.* at 2-3

[29] Declaration of Brandon Lord, *Atmus*, No. 1:26-01259 (U.S. Ct. Int'l Trade Mar. 6, 2026), ECF 31 at 6.

that was itself subject to IEEPA tariffs, at a price that Costco increased to pass through the IEEPA tariffs assessed on that good.

b. **U.S.-Sourced Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, inclusive, purchased from Costco a U.S.-sourced good that was not itself subject to IEEPA tariffs, at a price that Costco increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.

47. Excluded from the Class are Costco and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

48. The identity of all products encompassed within the Class definition ("Class Products") are readily identifiable from Costco's records. Class members and their purchases can be identified through multiple sources, including Class members' own transaction and payment records, Costco's records of Class Product purchases, and records maintained by payment processors and financial institutions associated with accepted forms of payment such as Visa card issuers, debit card providers, credit card companies, banks and mobile payment services.

49. **Numerosity**. Members of the Class are so numerous that joinder is impracticable. Plaintiff believes that the Class includes tens of millions of members (if not more), geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.

50. **Typicality**. Plaintiff's claims are typical of the claims of other Class members. Costco's liability to Plaintiff and to all other Class members rests on the same factual and legal bases, and the same conduct injured them all.

51. **Adequate Representation**. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. She has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the

proposed Class, and her interests do not conflict with the interests of the proposed Class members she seeks to represent.

52. **Commonality and Predominance**. Common questions of law and fact predominate over questions that may affect only individual Class members because Costco has acted on grounds generally applicable to the Class and because Class members share a common injury. Determining damages on a class-wide basis is therefore appropriate. The overcharge injuries incurred by Plaintiff and each Class member arose from the same conduct alleged herein.

53. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

(a) Whether the higher prices that consumers paid for products sold by Costco are attributable to the cost of IEEPA tariffs;

(b) Whether Costco is obligated to return the cost of IEEPA tariffs to the consumers who paid them in the form of higher prices;

(c) Whether Costco's retention of elevated consumer payments constitutes unjust enrichment;

(d) Whether Costco's use of IEEPA tariff-related funds to benefit Costco's business and political interests was unlawful;

(e) Whether Costco acted unlawfully by upcharging consumers in response to IEEPA tariff-related costs while making statements to the contrary;

(f) Whether Costco's conduct constitutes an unlawful business or trade practice under consumer protection statutes by collecting tariff-related surcharges from consumers while misrepresenting its pricing practices and failing to establish a consumer refund mechanism;

(g) Whether Costco's conduct has harmed Plaintiff and the Class uniformly; and

(h) The measure of damages or restitution available to Plaintiff and the Class due to increased prices caused by Costco's IEEPA tariff pass-through.

54. **Prevention of inconsistent or varying adjudications.** Individual prosecution of the claims alleged herein would likely yield inconsistent or varying results and establish incompatible standards of conduct for Costco. Certification of the proposed Class would prevent this outcome.

55. **Injunctive Relief**. Through the conduct described in this complaint, Costco has acted on grounds that apply generally to the proposed Class. Accordingly, final injunctive relief is appropriate for the Class as a whole.

56. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of the Class's claims. The damages suffered by individual Class members are relatively small compared to the burden of individual prosecution of this complex litigation. Individual lawsuits would risk inconsistent judgments and increase delay and expense for all parties. A class action presents fewer administrative difficulties. Class members are ascertainable through methods typical of class action practice, including Costco's own records and consumers' proof of purchase.

## CLAIMS FOR RELIEF

## COUNT I
## UNJUST ENRICHMENT

57. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

58. Plaintiff brings this Count on behalf of all Class members.

59. Plaintiff and the Class have conferred a benefit upon Costco in the form of money paid through tariff-inflated prices on goods during the period February 4, 2025, through February 20, 2026.

60. Costco received and accepted that benefit and was thereby enriched. Costco has retained the benefit conferred by Plaintiff without paying or otherwise compensating Plaintiff for its value.

61. The circumstances surrounding Costco's receipt and retention of this benefit make it unjust and inequitable for Costco to retain it without payment to Plaintiff. Costco obtained these funds through price increases on goods subject to unlawful tariffs and has retained the resulting profits.

62. Under principles of equity and good conscience, Costco should not be permitted to retain those ill-gotten profits while it seeks or will seek, a refund of the duties it paid.

63. Plaintiff and the Class have no adequate remedy at law.

64. Plaintiff and the Class are entitled to full disgorgement and restitution of any money Costco has retained as a result of the unlawful or wrongful conduct alleged herein.

**COUNT II**
**MONEY HAD AND RECEIVED**

65. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 56 as though fully set forth herein.

66. Plaintiff brings this Count on behalf of all Class members.

67. Costco received funds from Plaintiff and from each member of the putative Class in the form of an IEEPA tariff surcharge. The Supreme Court has determined that the IEEPA tariffs were unlawful.

68. The funds belonged to Plaintiff and to each member of the putative Class.

69. Costco has not returned the funds. Under principles of equity and good conscience, Costco should not be permitted to retain those ill-gotten funds. Plaintiff seeks the return of the funds in an amount to be proven at trial.

70. Plaintiff, on behalf of herself and the Class, seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and all other available remedies.

**COUNT III**
**VIOLATION OF THE NEW YORK CONSUMER PROTECTION LAW**

**NY Gen. Bus. Law §349 et, seq.**

71. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 56 as though fully set forth herein.

72. Plaintiff brings this Count on behalf of all Class members.

73. New York law forbids deceptive conduct or practices in carrying out any business, trade, or commercial activity, as well as in providing services. See N.Y. Gen. Bus. Law § 349.

74. At all relevant times, Defendant engaged in the regular course of trade and commerce in New York by marketing, distributing, supplying and/or selling merchandise to consumers in New York.

75. Defendant unlawfully and unfairly charged customers inflated prices to cover the costs of IEPPA tariffs while representing that Defendant's prices were not increasing in response to the IEPPA tariffs. Defendant also failed to disclose to consumers that it did not intend to seek a refund of IEPPA tariff payments from the federal government even if those tariffs were illegal and instead would use consumers' funds to pursue its own business interests and seek favorable treatment from Trump. This information is material to Plaintiff's purchasing decisions and if not

for Defendant's deceptive and unfair conduct, Plaintiff and the Class would not have purchased products from Defendant.

76. Defendant's acts complained of herein are a per se violation of the New York Consumer Protection Law §349 as these tariffs were illegal and unlawful.

77. Defendant's practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop in Defendant's brick and mortar and/or online stores.

78. Defendant's practices, as alleged herein, injured Plaintiff and the Class in their business or property.

79. Defendant is liable to Plaintiff for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under N.Y. Gen. Bus. Law §349.

**COUNT IV**
**VIOLATION OF THE NEW YORK CONSUMER PROTECTION LAW**
**NY Gen. Bus. Law §350 et, seq.**

80. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 56 as though fully set forth herein.

81. Plaintiff brings this Count on behalf of all Class members.

82. New York General Business Law §350 provides, in relevant part, that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

83. At all relevant times, Defendant engaged in the regular course of trade and commerce in New York by marketing, distributing, supplying and/or selling merchandise to consumers in New York.

84. Defendant unlawfully and unfairly charged customers inflated prices to cover the costs of IEPPA Tariffs while representing that Defendant's prices were not increasing in response to the IEPPA Tariffs. Defendant also failed to disclose to consumers that it did not intend to seek a refund of IEPPA Tariff payments from the federal government even if those tariffs were illegal and instead would use consumers' funds to pursue its own business interests and seek favorable treatment from Trump. This information is material to Plaintiff's purchasing decisions and if not for Defendant's deceptive and unfair conduct, Plaintiff and the Class would not have purchased products from Defendant.

85. Defendant's acts complained of herein are a per se violation of the New York Consumer Protection Law §350 as these tariffs were illegal and unlawful.

86. Defendant's practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop in Defendant's brick and mortar and/or online stores.

87. Defendant's practices, as alleged herein, injured Plaintiff and the Class in their business or property.

88. Defendant is liable to Plaintiff for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under N.Y. Gen. Bus. Law §350.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C. Declaratory relief that Defendant must return to Plaintiff and the proposed Class all funds paid by consumers to cover the IEEPA tariffs, with interest;

D. Costs, restitution, damages, including statutory, treble, punitive, and nominal damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 6, 2026

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik
NAPOLI SHKOLNIK
NSPR LAW SERVICES LLC
1302 Avenida Ponce de León
Santurce, PR 00907
Tel: (787) 493-5088
Hunter@nsprlaw.com

*/s/ Shayna E. Sacks*
Shayna E. Sacks
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

***Counsel for Plaintiff and the Proposed Class***